UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

  vs.                       REPORT AND RECOMMENDATION

Kelly James Michael Jones,

         Defendant.        Crim. No. 09-260 (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Kelly James Michael Jones ("Jones") to Suppress Evidence Obtained as a Result of Search and Seizure. A Hearing on Jones' Motion was conducted on October 8, 2009, at which time, Jones appeared personally, and by Andrea K. George, Assistant Federal Defender, and the Government appeared by Leisha M. Lee-Dixon, Assistant United States Attorney. For reasons which follow, we recommend that the Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied.

## II.  Factual and Procedural Background

Jones is charged with one (1) Count of being a Felon in Possession of a Firearm, in violation of Title 18 U.S.C. §§922(g)(1), and 924(a)(2).  The events which gave rise to those charges are alleged to have taken place on or about January 1, 2009, and January 16, 2009, in this State and District.

No testimony was adduced at the Hearing on the Motion, and therefore, we limit our consideration of the Motion to Suppress to the "four corners" of the Search Warrant, and the Warrant Application and Supporting Affidavit.  At the Hearing, the Government introduced Government's Exhibit 1, that is comprised of the Application and Supporting Affidavit ("Aff."), Search Warrant ("Warrant"), and the Return, which we received into evidence without objection.  As pertinent to the charge against Jones, and to the Motion now before us, the operative facts may be briefly summarized.[1]

---

[1]Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in determining a motion, the court shall state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991), cert. denied, 505 U.S. 1228 (1992)(at the time, the provision in question was Rule 12(e)); United States v. Prieto-Villa, 910 F.2d 601, 607-10 (9th Cir. 1990).

The challenged Search Warrant was issued by a Judge of the Minnesota District Court for St. Louis County, on January 16, 2009, and authorized a search of the residence of Cassandra Hill ("Hill"), which was to occur between 7:00 o'clock a.m., and 8:00 o'clock p.m. Specifically, the Search Warrant authorized a search and seizure of a black colored handgun, firearm ammunition, paperwork documenting the ownership of a firearm, and any indicia of occupancy. See, Warrant, at p. 1.

Attached to the Search Warrant was an Application, and Affidavit, that were executed by Investigator Laura Marquardt ("Marquardt"), who averred that she is an Investigator, and Peace Officer, in the State of Minnesota. See, Aff., at 1. In the Affidavit, Marquardt attests that, on January 1, 2009, Duluth Police Officers had responded to a 911 call concerning a man with a gun. Id. Marquardt avers that, upon arriving in response to the call, the Officers spoke to Cassandra Snickers ("Snickers"), Joshua Smith ("Smith"), and Breanna McCarthy ("McCarthy"). Id. Snickers, Smith, and McCarthy, reported that they had observed a male, who they knew as "Kelly," who they described as a light-skinned black male, about six feet tall, and who was reported to have drawn a black handgun while standing in the kitchen of Snickers' residence. Id.

Snickers, Smith, and McCarthy, informed the Officers that Kelly had fired a round from the handgun into the ceiling of Snickers' kitchen. <u>Id.</u> Snickers gave the officers a wallet that, she said, Kelly had left behind at her residence. <u>Id.</u> In the wallet, the officers found a number of items bearing the name Kelly James Michael Jones, including a Minnesota State Identification Card. <u>Id.</u> The officers checked Jones' criminal history, and learned that he was prohibited from possessing a firearm. <u>Id.</u> Marquardt's Affidavit attests that a State Court Judge had issued an Arrest Warrant for Kelly James Michael Jones, on January 13, 2009, for Possession of a Firearm by a Felon. <u>Id.</u>

According to Marquardt, on January 12, 2009, she received a call from a male caller at an unknown number. <u>Id.</u> The caller identified himself as Kelly James Michael Jones, and stated that he was calling Marquardt because she had attempted to find Jones by contacting his Probation Officer. <u>Id.</u> In response, Marquardt avers, in her Affidavit, that she had asked Jones to come in to speak to her, about the 911 call on January 1, 2009, and that Jones stated he would not do so. <u>Id.</u> According to Marquardt, Jones advised that he would not tell her where he was living, but he told her that she could contact him by calling Portia Johnson's telephone. <u>Id.</u> Marquardt

attests that Jones denied ever being at Snickers' residence, denied knowing anyone involved in the incident, and denied being involved in the incident himself.  Id.

Marquardt's Affidavit attests that an Officer, who was named Lepak, and who had knowledge, from his previous contacts, that Hill had been involved in a personal relationship with Jones.  Id. at 2.  Lepak also had knowledge of Hill's residence.  Id. As recounted by Marquardt, Lepak spoke to the manager of Hill's residence, and learned that a black male, who was named "Kelly," had been identified to the manager as Hill's boyfriend, had been staying with Hill since January 13, 2009, and had been trying to get on the lease at Hill's residence.  Id.  Marquardt stated, in her Affidavit, that the manager told Lepak that he had observed the man, who he knew as Kelly, drive Hill's car, and park it in her garage.  Id.   According to Marquardt, the manager told Lepak that the garage was a part of Hill's lease, and belonged to Hill.  Id.

Marquardt further avers that Lepak spoke to Hill's neighbor, who stated that he knew that Hill's boyfriend was a black male, who was named Kelly, and that he had observed that man "coming and going".  Id.  The neighbor agreed to contact Lepak, if he observed the man, whom he knew as Kelly, enter Hill's residence.  Id. According to Marquardt, on January 16, 2009, the neighbor contacted Lepak, and stated that he had observed the man, whom he knew as Kelly, enter Hill's residence.

Id.  Marquardt averred that the Officers, who located Jones at Hill's residence on January 16, 2009, had taken him into custody.  Id.

According to the Return, which had been filed with the Court, upon a search of Hill's residence on January 16, 2009, officers seized one Gunmate nylon holster, one Caltek nine (9) millimeter handgun, with a magazine and one "S+W sw99a" handgun with a magazine.  Return, at 1.  It is not clear from the Return whether either of the handguns is black in color.  Id.

## III.  Discussion

The Defendant's Motion to Suppress Evidence.

In his Motion to Suppress Evidence, Jones argues that "any search warrant issued in this case was issued without a sufficient showing of probable cause in the supporting affidavit * * * and that the search warrant involved was executed in an illegal and unlawful manner, and not in good faith."  See, Docket 18, at p. 1.  The Motion does not identify the Search Warrant he challenges but, given counsel's argument at the Motion Hearing of October 8, 2009, it is clear that Exhibit 1 -- the Warrant issued on January 16, 2009 -- is the Warrant in dispute, and we examine that Warrant, and its supporting papers for a showing of probable cause.

While we were able to determine the Search Warrant at issue, it is of particular moment that the Defendant's Motion does not specify the evidence that the Defendant asks us to suppress, or the grounds for suppression. It has long been this Court's practice to issue Arraignment Orders requiring defendants to particularize the bases for any Motion to Suppress evidence, so as to advance the interests of judicial economy, and the promotion of justice. We issued just such an Arraignment Order in this case, on September 25, 2009.[2] See, <u>Docket No. 11</u>. "At the end of the day, as

---

[2]Our Arraignment Order of September 25, 2009, see, <u>Docket No. 11</u>, at p. 2 of 3, contains the following language:

> That, no later than **October 5, 2009**, the Government shall disclose to the Defendant the statements, and the evidence secured, either with or without a Warrant, that the Government intends to introduce at Trial, and the Defendant shall particularize the bases for any Motion to Suppress such evidence.
>
> &ast; &ast; &ast;
>
> With increasing regularity, the Court has witnessed the parties failure to join the issues attendant to a defendant's Motion to Suppress. Frequently, the hallways of the Courthouse are replete with potential witnesses who will only be called to testify if the Defendant, at the time of the Hearing, voices a particular concern about the manner in which a statement was taken, or in which a search was conducted. The interests of justice are not served by the needless expenditures of both time and money, that are

the moving party, at a minimum it is defendant's burden to come forth with some evidence and argument to support his position that evidence, statements or a witness identification should be suppressed." United States v. Edwards, 563 F. Supp.2d 977, 994 (D. Minn. 2008), citing United States v. Starks, 193 F.R.D. 624, 628 (D. Minn. 2000).

The Defendant has been afforded ample opportunity to identify the evidence to be suppressed, and to explain the factual bases upon that suppression is being sought, and we would prefer that the specifications of error in the Warrant be more specific and precise. For example, at the Hearing, defense counsel advised that a buccal swab may have been taken, but she related that our decision, as to the validity of the Affidavit, which is attached to the Search Warrant, would resolve the issue as to the buccal swab. Neither the Search Warrant, nor the Affidavit, refer to a buccal swab and, indeed, there is nothing else in the Record that so much as mentions a buccal swab. Since the Defendant has proffered neither evidence, nor argument, as to the

occasioned by the failure of counsel to communicate. We take this means of assuring that the failure to communicate will not reoccur. We need not here specify the sanctions that will attend the party who should elect to disregard this effort at judicial efficiency. Suffice it to say that it is this Court's expectation that being forewarned will obviate any need to address the issue further.

purported invalidity of the buccal swab, and because the Record contains nothing addressing that question, we recommend that the suppression of that swab be denied. See, United States v. Starks, supra at 628, and 630 (finding that the defendant's failure to "articulate any cogent reason" why any evidence or statements should be suppressed warranted denial of the defendant's pretrial suppression Motions, as the factual circumstances were not evident from the defendant's filings).

Moreover, the Defendant has not identified the evidence, that was secured by the Search Warrant, should be suppressed, nor has he offered any factual or legal grounds for suppression. Having so failed to satisfy his burden of production, we recommend denying his Motion to Suppress on that basis alone. See, e.g., United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987)(On a Motion to Suppress telephonic interceptions, the defendant's failure to "assert what may have been wrong with the interceptions, or in fact, even what interceptions that he [was] concerned with," justified the District Court's decision to deny the Motion without the conduct of an Evidentiary Hearing); see also, United States v. Quiroz, 57 F. Supp.2d 805, 822-23 (D. Minn. 1999)("boilerplate motion" to suppress statements denied due to failure to satisfy specificity requirement). Nonetheless, in an abundance of caution, we proceed with address the merits of the Defendant's Motion by considering the

probable cause detailed in the Warrant's supporting papers, and by examining for any other fatal deficiencies in the Warrant.  See, <u>United States v. Edwards</u>, supra at 995. As we detail below, no basis to suppress the evidence obtained by the warranted search and seizure has been established, and therefore, we recommend that Jones' Motion to Suppress be denied.

   A.   <u>Standard of Review</u>.  In the issuance of a Search Warrant, the Fourth Amendment requires that an impartial, neutral, and detached Judicial Officer assess the underlying factual circumstances, so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband.  See, <u>Johnson v. United States</u>, 333 U.S. 10, 14 (1948) ("neutral and detached magistrate" must determine probable cause); <u>Warden v. Hayden</u>, 387 U.S. 294, 310 (1967)(searches and seizures for 'mere evidence' permissible as well as fruit, instrumentalities, or contraband); <u>United States v. Johnson</u>, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996).  In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place. See, <u>United States v. Gladney</u>, 48 F.3d 309, 312 (8th Cir. 1995); <u>United States v.</u>

Tagbering, 985 F.2d 946, 949 (8th Cir. 1993); United States v. El-Alamin, 574 F.3d 915, 923 (8th Cir. 2009), citing United States v. Grant, 490 F.3d 627, 631 (8th Cir. 2007), cert. denied, --- S.Ct. ---, 128 S.Ct. 1704 (2008). For these purposes, probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983); see also, Ornelas v. United States, 517 U.S. 690, 695-96 (1996).

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'" United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting United States v. Goodson, 165 F.3d 610, 613 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999); see also, United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007), cert. denied, --- U.S. ---, 128 S.Ct. 1704 (2008). In conducting such an examination, the Court should review the Affidavit as a whole, and not on a paragraph-by-paragraph basis. See, United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); Technical Ordnance, Inc. v. United States, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002).

Moreover, the reviewing Court must not engage in a de novo review, but rather, should accord great deference to the decision of the Judicial Officer who issued the

Warrant.  United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516

U.S. 903 (1995); United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied,

498 U.S. 1094 (1991).  The reviewing Court's duty "is to ensure that the issuing judge

had a substantial basis for concluding that probable cause existed."  United States v.

Kattaria, 553 F.3d 1171, 1175 (8th Cir. 2009), quoting United States v. LaMorie, 100

F.3d 547, 552 (8th Cir. 1996).  This mandated deference to the determination of the

issuing Judicial Officer is consistent with the Fourth Amendment's sound preference

for searches that are conducted pursuant to Warrants.  Illinois v. Gates, supra at 236.

      B .  Legal Analysis.  Without greater specificity on his part, we understand

the Defendant to argue that probable cause did not support the issuance of the

Warrant, and that other, non-specified defects, rendered the Warrant unlawful.  We

find neither contention persuasive.

      1.  Probable Cause.  On the basis of Marquardt's attestations, we find

that the issuing Judicial Officer had a substantial basis upon which to conclude that

there was an adequate showing of probable cause to support the Warrant's issuance

for a search of Hill's residence.  We recognize, of course, that much of the information

in the Affidavit was supplied by Officer Lepak, "Patrol Officers," and "Officers," and

were not, necessarily, the personal observations of Marquardt, but probable cause

"may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication." United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003), cert. denied, 541 U.S. 1081 (2004), quoting United States v. Horne, 4 F.3d 579, 585 (8th Cir. 1993), cert. denied, 510 U.S. 1138 (1994); see also, United States v. Hensley, 469 U.S. 221, 232 (1985). Here, it is apparent from Marquardt's Affidavit that all of the Officers working on the case were in communication, at least with Marquardt, who had obtained the information provided in the Affidavit from them. We find that this satisfies the "some degree" of communication requirement so as to properly allow a probable cause finding based upon their collective knowledge.

We note also that much of the information contained in the Affidavit was obtained from Snickers, Smith, and McCarthy, concerning Jones possessing a firearm, or from Hill's residence manager, and a neighbor, concerning Jones' connection to Hill's residence.  When  probable cause for a Search Warrant is based upon information provided by an informant, the core question "'is whether the information is reliable.'"  United States v. Warford, 439 F.3d 836, 841 (8th Cir. 2006), quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993); United States v. Koons,

300 F.3d 985, 990 (8th Cir. 2002); see also, <u>United States v. Reivich</u>, 793 F.2d 957, 959 (8th Cir. 1986)("[T]he informant's reliability, veracity, and basis of knowledge are relevant considerations -- but not independent, essential elements -- in finding probable cause.").  As our Court of Appeals has explained:

> In [Illinois v.] Gates, the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations:  a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." * * * 462 U.S. at 233, 103 S.Ct. at 2329.

<u>United States v. Olson</u>, 21 F.3d 847, 850 (8th Cir. 1994), cert. denied, 513 U.S. 888 (1994).

As a result, "'an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination.'"  <u>Id.</u>, citing <u>United States v. Anderson</u>, supra at 615.

As a consequence, the "core question" is whether the information, which was provided by the informant, was reliable.  See, <u>United States v. Williams</u>, 10 F.3d 590, 593 (8th Cir. 1993)("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable.").  An informant is deemed reliable when his statements are corroborated by independent

evidence.  See, <u>United States v. Carpenter</u>, 341 F.3d 666, 669 (8th Cir. 2003) ("[C]orroboration of minor, innocent details may support [a] finding of probable cause."), citing <u>United States v. Tyler</u>, 238 F.3d 1036, 1039 (8th Cir. 2001); see also, <u>United States v. Stevens</u>, 530 F.3d 714, 719 (8th Cir. 2008), citing <u>United States v. Solomon</u>, 432 F.3d 824, 828 (8th Cir. 2005)(same).

However, where an Affidavit relies on statements given by a private citizen, there is not the same need to corroborate as with an unidentified, confidential informant, absent an indication of a motive to falsify.  See, <u>United States v. Lewis</u>, 738 F.2d 916, 922 (8th Cir. 1984)(rejecting challenge to private citizen's credibility and reliability when she had no motive to falsify, and the basis of her knowledge was given in affidavit); <u>United States v. Ross</u>, 713 F.2d 389, 393 (8th Cir. 1983)("We here deal with a citizen informant with no motive to falsify, rather than a professional informant, with attendant credibility concerns.").

Moreover, Courts have recognized that "a known informant * * * can be held responsible if her allegations turn out to be fabricated," see, <u>United States v. Stevens</u>, supra at 718, citing <u>United States v. Solomon</u>, supra at 827-28, quoting, in turn, <u>Florida v. J.L.</u>, 529 U.S. 266, 270 (2000), and "in-person statements allow [an] affiant to assess [an] informant's veracity."  <u>Id.</u>, citing <u>United States v. Gabrio</u>, 295 F.3d 880,

883 (8th Cir. 2002). While Marquardt does not appear to have interviewed Snickers, Smith, and McCarthy, they were interviewed by law enforcement, and made statements which, if untrue, could have subjected them to punishment. As a result, the Supreme Court has found that, "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." United States v. Carter, 413 F.3d 712, 714 (8th Cir. 2005), quoting Illinois v. Gates, supra at 234. Finally, probable cause will support the issuance of a Search Warrant where "the information given by the first informant was corroborated with specific, consistent details provided by the second informant." United States v. Brown, 499 F.3d 817, 821 (8th Cir. 2007), quoting United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998).

In Marquardt's Affidavit, she averred that the Officers had spoken with Snickers, Smith, and McCarthy, and that all three reported that they had observed the man they knew as Kelly, whom they all described as possessing a black handgun. All three (3) further stated that they had observed him fire the black handgun in Snickers' kitchen, into the ceiling. Snickers also gave officers a wallet, which she identified as the one that Kelly had left at her residence, and which contained multiple items with

the name Kelly James Michael Jones.  All three (3) witnesses identified themselves, represented that they had observed the incident first-hand, and had no apparent motive to falsify their accounts to the police.  Indeed, if their reports were deliberately false, each could face the repercussions of providing a false report to a police officer.  See, Minnesota Statutes Section 609.505; see also, United States v. Solomon, supra at 827.

In addition to each of those three (3)  witnesses corroborating the statements of the other two (2), Jones' wallet corroborated the statements of all three (3) witnesses, that Jones had left his wallet at Snickers' residence.  From the information contained in the wallet, the officers then determined that Jones was prohibited from owning a firearm, owing to his status as a felon, and therefore, that his possession of a firearm was in violation of the law.  His status as a felon is apparent on the face of the Search Warrant, given the Arrest Warrant which had been issued by a State Court Judge on January 13, 2009, for Possession of a Firearm by a Felon.  Accordingly, we find and conclude that the Judicial Officer, who issued the Search Warrant, could properly find that the statements of the informants were sufficiently reliable to establish probable cause to issue the Search Warrant for the black colored handgun, the firearm

ammunition, and any paperwork disclosing the ownership of the firearm, or providing indicia of occupancy.[3]

Moreover, the Supreme Court has found that "the very assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law." United States v. Ketzeback, 358 F.3d 987, 992 (8th Cir. 2004), quoting United States v. Knights, 534 U.S. 112, 120 (2001). Here, Marquardt averred that she had contacted Jones' Probation Officer in order to locate him, and that Jones contacted her in response, demonstrating that he was on probation at the time, and therefore, more likely than a citizen not on probation to have violated the law. While we do not place much weight on this factor, we do not ignore its impact in our totality of the evidence analysis.

---

[3]We note that the Court of Appeals for the Eighth Circuit has previously expressed some concern over the breadth of Search Warrants that authorize officers to search for "indicia of occupancy." See, United States v. Timley, 443 F.3d 615, 623 (8th Cir. 2006), cert. denied, 549 U.S. 889 (2006). Where one (1) portion of a Search Warrant is invalid, that portion is severed from the rest of the Warrant, and any items searched or seized under that portion may be suppressed. Id. at 622; see also, United States v. Fitzgerald, 724 F.2d 633, 636 (8th Cir. 1983)[en banc], cert. denied, 466 U.S. 950 (1984). Here, we note indicia of occupancy may be material to the possession charge, and that the Return reveals that nothing was seized at Hill's residence pursuant to the "indicia of occupancy" portion of the Warrant. As a result; we need not decide whether this aspect of the Warrant was over-broad under the circumstances of this case.

We further find that the information, which was contained in the Search Warrant Application, had not become impermissibly stale by the time that the Search Warrant was issued and executed. "It is axiomatic that probable cause must exist at the time of the search and not merely at sometime earlier." United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005), citing United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998); see, United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir. 1995), cert. denied, 516 U.S. 871 (1995). Therefore, a lapse of time, between the observations of a witness and the issuance of a Search Warrant, like a delay in executing a Search Warrant, "may make probable cause fatally stale." United States v. Maxim, supra at 397 [quotations omitted].

"There is no bright-line test for determining when information is stale," and the passage of time, alone, is "not always the controlling factor," as other factors, such as "the nature of the criminal activity involved and the kind of property subject to the search," are also relevant to the inquiry. Id., quoting United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993) and United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992); see also, United States v. Kennedy, supra at 1141; United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002). As but one example, when the Affidavit alleges an "ongoing, continuous criminal enterprise, the passage of time between the receipt

of information and the search becomes less critical in assessing probable cause." United States v. Rugh, supra at 754.

The possession of a weapon is a continuous offense, see, United States v. Maxim, supra at 397. In this case, on January 1, 2009, the Officers identified Jones as the individual that Snickers, Smith, and McCarthy, had observed discharge a firearm in Snickers' kitchen. However, the Officers were not able to locate Jones until January 16, 2009. When they did discover his whereabouts, and after arresting him for the possession charge at Hill's residence, the officers applied for the Search Warrant. Not surprisingly, a firearm is a "durable good." United States v. Pritchett, 40 Fed.Appx. 901, 906 (6th Cir. 2002)[unpublished].

A person in possession of a firearm is more likely to retain possession than would be true with an item that was more subject to consumption or destruction, such as drugs. Compare, United States v. Neal, 528 F.3d 1069, 1074 (8th Cir. 2008)("[I]ndividuals who possess firearms tend to keep them for long periods of time"), United States v. Maxim, supra at 397, United States v. Perry, 531 F.3d 662, 666 (8th Cir. 2008)("[O]ur case law suggests that firearms may be retained for long periods of time * * *."), United States v. Miles, 772 F.2d 613, 616 (10th Cir. 1985)(two and a half weeks between a witness observing stolen firearms in the

possession of the defendant, and the issuance of Search Warrant, did not render information stale), and United States v. Button, 653 F.2d 319, 324-25 (8th Cir. 1981) (affiant's assertion that PCP had been stored at the defendant's home "within the last six months" was stale, especially considering the movability and concealability of drugs).

Therefore, a delay of two (2) weeks, in light of a possession crime which is ongoing, is not so long as to make the information, which was obtained on January 1, 2009, stale. See, United States v. Jeanetta, 533 F.3d 651, 655 (two (2) week delay from most recent drug buy did not render information stale, because of evidence of ongoing criminal activity). According to the Return, the warrant was executed on the same day on which it was issued -- January 16, 2009, at 7:25 p.m.[4] Accordingly, we

---

[4]Although the Defendant did not raise the issue, we note that the Return is not signed by Marquardt. Minnesota Statutes Section 626.17 requires Officers to return State-issued Search Warrants "verified by the certificate of the officer at the foot of the inventory." However, we also note that administrative errors, and a failure to comply with regulations regarding Returns, are not valid bases for the suppression of evidence that was legally obtained within the scope of a valid Search Warrant, so long as there is no showing, as is the case here, of prejudice or deliberate disregard of the regulation. See, United States v. Burgard, 551 F.2d 190, 193 (8th Cir. 1977) (stating that noncompliance with Rule 41, Federal Rules of Criminal Procedure, does not warrant exclusion, absent prejudice or deliberate disregard); United States v. Loudon, 2009 WL 88339 at *3 (D.Vt. Jan. 12, 2009); United States v. Stockheimer, 807 F.2d 610, 613 (7th Cir. 1986), cert. denied, 481 U.S. 1018 (1987); United States v. Thompson, 263 Fed.Appx. 374, 379 (4th Cir. 2008)[unpublished]. Here, the

find that the information, that is contained in the Affidavit, had not become impermissibly stale by the time the Search Warrant was issued, and executed.

We also assume that the Defendant challenges the adequacy of the probable cause as it relates to the location to be searched -- Hill's residence. "[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000). However, to sustain that nexus, the Application and Affidavit for the Search Warrant need only establish a "fair probability" that the named contraband would be found in a particular place, based on the circumstances described in the Application and Affidavit. Id. at 549.

Here, the Affidavit attested that the Defendant was arrested at Hill's residence, the manager had informed Lepak that Jones had been attempting to be named in the lease at that residence since January 13, 2009, that Jones was Hill's boyfriend and had been "staying with" Hill since January 13, 2009, and that the manager had observed him at the residence and driving Hill's car, and parking the vehicle in her garage. Hill's neighbor had independently informed the officer that he had seen Jones

---

Defendant has made no showing of prejudice or deliberate disregard, and therefore, we find no merit to the suppression of evidence owing to Marquardt's apparent administrative error.

"coming and going," to and from Hill's residence, and that he knew Jones to be Hill's boyfriend. Both identified the man they knew as "Kelly," a black male. The statements of the manager, and neighbor, reflect the probability that Jones had moved, with his possessions, into Hill's residence. This probability, as coupled with the fact that Jones was arrested at Hill's residence, gave the issuing Judicial Officer a substantial basis on which to conclude that the black handgun would be found in Hill's residence. See, e.g., United States v. Steeves, 525 F.2d 33, 38 (8th Cir. 1975)("[P]eople who own pistols generally keep them at home or on their persons."); see also, United States v. Williams, 544 F.3d 683, 688 (6th Cir. 2008), cert. denied, --- U.S. ---, --- S.Ct. ---, 2009 WL 1489849 (U.S., October 5, 2009)[citing cases].

Moreover, our function, at this juncture, is not to review the Search Warrant de novo, but simply to determine whether the issuing Judicial Officer "had a substantial basis for * * * concluding that probable cause existed." United States v. Olvey, 437 F.3d 804, 807 (8th Cir. 2006), quoting United States v. Gladney, supra at 312. Here, we are satisfied that the Affidavit presented a sufficient nexus, between Hill's residence and Jones, to satisfy the probable cause standard. Therefore, we find that the information provided by Marquardt's Affidavit established "a probability or substantial chance of criminal activity" occurring at Hill's residence, and being

perpetrated by Jones.  See, <u>United States v. Neumann</u>, 183 F.3d 753, 756 (8th Cir. 1999)("Probable cause requires 'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"), quoting <u>United States v. Payne</u>, 119 F.3d 637, 642 (8th Cir. 1997).[5]

B.    <u>The Presence of Any Fatal Defects</u>.  Jones has not identified any fatal defects in the Search Warrant under review, and our independent review has detected none.  In sum, finding no basis upon which to suppress the evidence obtained pursuant

---

[5]We recognize that, if we concluded that the good faith exception applied, then it would have been unnecessary "to visit the underlying question of probable cause." <u>United States v. Proell</u>, 485 F.3d 427, 430 (8th Cir. 2007), quoting <u>United States v. Warford</u>, 439 F.3d 836, 841 (8th Cir. 2006); see also, <u>United States v. Rodriguez</u>, 484 F.3d 1006, 1011 (8th Cir. 2007), cert. denied, 128 S.Ct. 316 (2007).  Nevertheless, in the interests of completeness, we first reviewed the question of probable cause, and have determined that probable cause for the Warrant's issuance is ample.

Even if probable cause had been insufficient, we find that the good cause exception, first articulated in <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984), would preclude the suppression of the evidence seized during the search of Hill's residence. Under analogous circumstances, our Court of Appeals concluded that "it was reasonable to believe that [a suspect] kept at his residence other firearms that he was known to carry with him." <u>United States v. Warford</u>, supra at 840, citing <u>United States v. Steeves</u>, supra at 38, ("[P]eople who own pistols generally keep them at home or on their persons."). Under the circumstances that were detailed in the Affidavit of Marquardt, which persuaded a neutral and detached State Court Judge to issue a Warrant to search Hill's residence for a specifically described firearm, we find that the searching officer's reliance upon the Warrant was in objective good faith.

to the Search Warrant issued on January 16, 2009, we recommend that Jones' Motion to Suppress be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Motion of the Defendant to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 18] be denied.


Dated: October 30, 2009                    s/Raymond L. Erickson
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than November 17, 2009**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.

Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than November 17, 2009**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.